Parisa Ijadi-Maghsoodi, SBN 273847
Parisa.Ijadi-Maghsoodi@disabilityrightsca.org
Nichole Mendoza, SBN 276632
Nichole.Mendoza@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
530 B St., Suite 400
San Diego, CA 92101
Telephone: (619) 239-7861/Fax: (619) 239-7906

Navneet Grewal, SBN 251930
Navneet.Grewal@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000/Fax: (213) 213-8001


*[Additional counsel listed on following page]*


Attorneys for Plaintiff and Petitioner
DARLISA MCDOWELL

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAACP SAN DIEGO BRANCH, SAN DIEGO TENANT UNION; and DARLISA MCDOWELL,<br><br>        Plaintiffs and<br>        Petitioners,<br><br>    v.<br><br>SAN DIEGO HOUSING COMMISSION; and DOES 1-20, inclusive,<br><br>        Defendants and<br>        Respondents. | Case No.: 3:20cv-00183-AJB-BLM<br><br>*Hon. Anthony J. Battaglia*<br>*Mag. Barbara Lynn Major*<br><br>**PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**<br><br>Date: April 9, 2020<br>Time: 2:00 p.m.<br>Courtroom: 4A |

Bryan W. Pease, Esq. (SBN 239139)
LAW OFFICES OF BRYAN W. PEASE
302 Washington St. #404
San Diego, CA  92103
Telephone: (619) 723-0369
Email: bryan@bryanpease.com

James D. Crosby, Esq. (SBN 110383)
ATTORNEY AT LAW
550 West C Street, Suite 790
San Diego, CA 921018
Telephone: (619) 450-4149
Email: crosby@crosbyattorney.com

Attorneys for Plaintiffs and Petitioners
NAACP SAN DIEGO BRANCH,
SAN DIEGO TENANT UNION, and
DARLISA MCDOWELL

///

///

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................10

II.   PROCEDURAL HISTORY...................................................11

III.  STANDARD OF REVIEW .................................................11

IV.   ARGUMENT ......................................................................12

    A.    The State Court ruling and order on the Housing Commission's Demurrer remains in full force and effect under 28 U.S.C. § 1450. ..12

        1.    The Superior Court correctly rejected the Housing Commission's argument that Petitioners failed to allege sufficient facts to state a cause of action under the Unruh Civil Rights Act. ..................................................................13

        2.    The Superior Court correctly rejected the Housing Commission's argument that Petitioners failed to allege sufficient facts to state a cause of action under CCP § 1559.........15

        3.    The Superior Court addressed the Housing Commission's arguments that Petitioners failed to allege sufficient facts to state a cause of action under Gov. Code § 11135..........................16

        4.    The Superior Court correctly addressed the Housing Commission's arguments that Petitioners failed to allege sufficient facts to state a cause of action under CCP § 1085.........17

    B.    Under the law of the case doctrine, the State Court Ruling and Order on the Housing Commission's Demurrer governs the issues raised in the Housing Commission's Motion to Dismiss. .................................18

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1

C.   Petitioners allege sufficient facts to state a claim under the Unruh

2

Civil Rights Act, CCP § 1559, Gov. Code § 11135, and CCP § 1085.

3

.........................................................................................21

4

1.   Petitioners allege sufficient facts to state a cause of action under

5

the Unruh Civil Rights Act. ...........................................................21

6

7

2.   Petitioners allege sufficient facts to state a cause of action under

8

CCP § 1559. ...................................................................................24

9

3.   Petitioners allege sufficient facts to state a cause of action under

10

Gov. Code § 11135. .......................................................................31

11

12

4.   Petitioners Allege Sufficient Facts for their Writ of Mandate

Claim (CCP § 1085). .....................................................................32

13

14

V.   CONCLUSION ...............................................................................................34

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.*,
   21 Cal.4th 352, 361 (1999)) ........................................................................ 33

*Astra USA, Inc. v. Santa Clara County*,
   563 U.S. 110 (2011) ......................................................................... 25, 26, 29

*Baldwin v. Hous. Auth. of City of Camden*, *NJ*,
   278 F. Supp. 2d 365 (D.N.J. 2003) ............................................................ 34

*Bohlke v. California*,
   2006 WL 2355395 (N.D. Cal. Aug. 15, 2006) .......................................... 21

*Broncel v. H & R Transp., Ltd.*,
   2010 WL 3582492 (E.D. Cal. 2010) .......................................................... 20

*Burnett v. San Francisco Police Department*,
   36 Cal. App. 4th 117 (1995) (San Francisco enacted an ordinance precluding
   minors from entering nightclubs) ................................................................ 24

*California Sch. Bds. Assn. v. State of California*,
   192 Cal. App. 4th 770 (2011) ..................................................................... 34

*California Teachers Assn. v. Nielsen*,
   87 Cal. App. 3d 25 (1978) .......................................................................... 34

*Carter v. City of Los Angeles*,
   224 Cal.App.4th 808 (2014) ....................................................................... 23

*City of Culver City v. State Bd. of Equalization*,
   29 Cal. App. 3d 404 (1972) ........................................................................ 34

*Comm. for Immigrant Rights v. County of Sonoma*,
   644 F. Supp. 2d 1777 (2019) ...................................................................... 31

*Curran v. Mount Diablo Council of the Boy Scouts*,
   17 Cal. 4th 670 (1998) ................................................................................ 24

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

*Curtis v. Hous. Auth. of Oakland*,
    746 F. Supp. 989 (N.D. Cal. 1990) ......................................................... 28

*Elmore v. Imperial Irrigation Dist.*,
    159 Cal. App. 3d 185 (1984) ............................................................. 32, 34

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005) ............................................................................... 20

*Faurie v. Berkeley Unified School Dist.*,
    2008 WL 1886011 (N.D. Cal. 2008) ............................................... 12, 19

*Gallagher v. San Diego Unified Port Dist.*,
    14 F. Supp. 3d 1380 (S.D. Cal. 2014) .................................................. 18

*Galzinski v. Somers*,
    2 Cal. App. 5th 1164, 1171-1175 (2016) .............................................. 34

*Gilligan v. Jamco Develop. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ................................................................ 11

*Gonzalez v. Arizona*,
    677 F.3d 383 (9th Cir. 2012) ................................................................ 18

*Goonewardene v. ADP, LLC*
    6 Cal.5th 817, 826 (2019) ............................................................... 26, 27

*Holbrook v. Pitt*,
    643 F.2d 1261 (7th Cir. 1981) .............................................................. 28

*International Audio-Text Network, Inc. v. AT&T Co.*,
    62 F.3d 69 (2d Cir. 1995) ..................................................................... 11

*Isbister v. Boys' Club of Santa Cruz, Inc.*,
    40 Cal.3d 72 (1985) ......................................................................... 21, 22

*Johnson v. State of California*,
    207 F.3d 650 (9th Cir. 2000) ................................................................ 12

*Killmeyer v. Oglebay Norton Co.*,
    817 F. Supp. 2d 681 (W.D. Pa. 2011) ................................................... 13

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*King v. Martin,*
   21 Cal. App. 3d 791 (1971) ...................................................................... 33

*Kona Enters., v. Estate of Bishop,*
   229 F.3d 877 (9th Cir. 2000) ................................................................... 20

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
   507 U.S. 163 (1993)................................................................................... 11

*Lewin v. St. Joseph Hospital of Orange,*
   82 Cal. App. 3d 368, 386 (1978). ........................................................... 33

*M. v. Nulick,*
   2016 WL 2756822 (E.D. Cal. 2016) ....................................................... 21

*Martinez v. Socoma Companies, Inc.,*
   11 Cal.3d 394 (1974) ........................................................................... 25, 27

*Maya v. Centex Corp.,*
   658 F. 3d 1060 (9th Cir. 2011) ................................................................ 25

*MediterraneanCoins, GmbH v. eBay.com,*
   2005 WL 3096374 (N.D. Cal. Nov. 14, 2005) ....................................... 12

*O'Connor v. Village Green Owners Assn.,*
   33 Cal.3d 790 (1983) ............................................................................... 22

*Payne v. Superior Court,*
   17 Cal.3d 908 (1976) ............................................................................... 32

*Pich v. Lightbourne,*
   221 Cal. App. 4th 480 (2013) .................................................................. 34

*Qualified Patients Assn. v. City of Anaheim,*
   187 Cal. App. 4th 734 (2010) .................................................................. 24

*Ramirez, Leal & Co. v. City Demonstration Agency,*
   549 F.2d 97 (9th Cir. 1976) ..................................................................... 28

*Resolution Tr. Corp. v. Bayside Developers,*
   43 F.3d 1230 (9th Cir. 1994) ................................................................... 13

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

*Resolution Tr. Corp. v. Nernberg*,
 3 F.3d 62 (3d Cir. 1993) .......................................................................... 13

*Roberts v. Corrothers*,
 812 F.2d 1173 (9th Cir.1987) ................................................................. 25

*Service Employees Internat. Union, Local 99 v. Options—A Child Care & Human Services Agency*,
 200 Cal. App. 4th 869 (2011) ................................................................. 29

*Shell v. Schmidt*,
 126 Cal.App.2d 279 (1954) ............................................................... 27, 28

*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*,
 515 F.3d 1019 (9th Cir. 2008) ................................................................ 18

*Villery v. Department of Corrections & Rehabilitation*,
 246 Cal. App. 4th 407 (2016) ................................................................. 33

*Wallace v. Chicago Housing Authority*,
 298 F.Supp.2d 710 (N.D. Ill. 2003) ................................................... 30, 31

*Walsh v. Tehachapi Unified Sch. Dist.*,
 827 F. Supp. 2d 1107 (E.D. Cal. 2011) ................................................... 21

*Williams v. Cty. of Alameda*,
 No. 18-cv-05707-JSC, 2018 U.S. Dist. LEXIS 185930 (N.D. Cal. Oct. 30, 2018) ....................................................................................................... 23

*Yates v. E. Side Union High Sch. Dist.*,
 2019 WL 721313 (N.D. Cal. Feb. 20, 2019) ........................................... 22

*Zakaria v. Lincoln Property Co. No. 415, Ltd.*,
 185 Cal. App. 3d 500 (1986) ................................................................... 28

*Zigas v. Superior Court*,
 120 Cal.App.3d 827 (1981) ............................................................... 25, 27

**Statutes**

28 U.S.C. § 1446(a) ................................................................................. 10, 13

28 U.S.C. § 1450 ................................................................................ 10, 12, 13

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Civ. Code § 1559 ......................................................................*passim*

Gov. Code § 11135 ..................................................................*passim*

Gov. Code § 17612 ........................................................................ 34

Unruh Act .................................................................... 14, 21, 23, 24

Unruh Civil Rights Act ............................................................ 13, 21

**Rules and Regulations**

Rule 12 .......................................................................................... 11

Rule 12(b)(1) ................................................................................ 25

Rule 12(b)(6) .......................................................................... 18, 24

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478,
     (2002) ..................................................................................... 19

## I.      Introduction

Petitioners NAACP San Diego Branch, a civil rights organization that seeks to eliminate racial prejudice through various means which include the enforcement of laws securing civil rights, San Diego Tenant Union, a tenants' rights association that creates opportunities for low-income tenants and provides assistance to members seeking to obtain and maintain rental units outside of racially segregated areas of San Diego, and Darlisa McDowell, a Section 8 participant that has struggled to obtain housing in a low-poverty, high-opportunity area for herself and her five children, respectfully submit this Opposition to the Motion to Dismiss filed by Respondent San Diego Housing Commission.

Petitioners' Second Amended Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief makes sufficient allegations to support each cause of action, including the four state law claims the Housing Commission targets through its Motion to Dismiss. Through its Motion to Dismiss, the Housing Commission is surreptitiously asking this Court to overturn the Superior Court's rejection of its demurrer to these same four causes of action. The Housing Commission merely repeats, practically verbatim, four arguments that were briefed, argued, and then soundly addressed by the Superior Court.

Through its Motion to Dismiss, the Housing Commission is in effect asking the federal court to sit as an appellate court of the state court ruling, despite the longstanding principle that a litigant should not be able to challenge state court orders in federal courts as a means of relitigating matters that already have been considered and decided by a court of competent jurisdiction.

The Housing Commission failed to file the demurrer ruling and order with its notice of removal, as required by 28 U.S.C. § 1446(a), and did not disclose the ruling and order in its Motion to Dismiss. Because the Superior Court has ruled on the issues before this Court already, under 28 U.S.C. § 1450 and the law of the case doctrine, the Housing Commission's Motion to Dismiss should be denied in

its entirety. The Housing Commission's Motion to Dismiss fails on the merits, just as it did in the Superior Court.

## II.     Procedural History

On March 7, 2019, Petitioners filed their Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief in San Diego Superior Court, alleging six state law causes of action. On June 21, 2019, Petitioners filed their First Amended Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief (FAP), alleging seven causes of action: the six existing causes of action and one new federal law cause of action. The Housing Commission demurred.

On November 1, 2019, The San Diego Superior Court overruled in part and sustained in part, with leave to amend, the demurrer. Accordingly, on December 31, 2019, Petitioners filed the Second Amended Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief (SAP) with the *same seven causes of action*, but including more recent 2019 data.

In response, on January 29, 2020, the Housing Commission filed a notice of removal. The Housing Commission based federal question jurisdiction on Petitioners' federal law cause of action. ECF Document 1, ¶¶ 3, 4. On February 5, the Housing Commission filed a motion to dismiss four of Petitioners' state law causes of action; the motion mirrors the demurrer in state court. ECF Document 5.

## III.    Standard of Review

A motion to dismiss under Rule 12 is disfavored and rarely granted. *Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). As a Rule 12 motion tests the sufficiency of the complaint, all material factual allegations in the complaint must be assumed to be true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993). Any ambiguity in the documents is to be resolved in the Plaintiff's favor. *International Audio-Text Network, Inc. v. AT&T Co.,* 62 F.3d 69, 72 (2d Cir. 1995). This liberal construction

rule is particularly stringent in civil rights cases like this one. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000).

## IV.   Argument

### A.   The State Court ruling and order on the Housing Commission's Demurrer remains in full force and effect under 28 U.S.C. § 1450.

When actions are removed from a state court to a federal district court: "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450.  Thus, "removal of the instant case does not allow [a defendant] to avoid any orders or enforcement that may have been pending in state court." *MediterraneanCoins, GmbH v. eBay.com*, 2005 WL 3096374, at 4 (N.D. Cal. Nov. 14, 2005). And yet, the Housing Commission is attempting to avoid the Superior Court's order on its demurrer by filing a brand-new Motion to Dismiss instead of a motion to reconsider the existing ruling on demurrer. The Court should not let this stand.

*Faurie v. Berkeley Unified School Dist.*, 2008 WL 1886011 (N.D. Cal. 2008), presents an order for sanctions in a case in a nearly identical procedural posture to this case and is instructive. RJN, Exhibit 1. In *Faurie*, the defendant, like the Housing Commission in this case, removed a case after a state court had ruled on a demurrer, in plaintiff's favor. *Id.* at 2. Like the Housing Commission in this case, the defendant in *Faurie* "failed to acknowledge the superior court's rulings in her briefing" and "asserted numerous theories already raised in the Superior Court — sometimes verbatim — without noting that the Superior Court had ruled on virtually identical arguments." *Id.*; Memorandum of Points and Authorities ISO Respondent's Demurrer (Resp.'s Demurrer).[1] The court found the defendant's

---

[1] Petitioners detail, *infra,* specific comparisons between the Housing Commission's Demurrer and Motion to Dismiss for each of the four causes of actions.

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

"failure to be forthcoming . . . reckless, given the unequivocal rule set out in 28 U.S.C. § 1450 . . . that state court orders remain in effect until modified by the district court." *Id*. at 5. Not only is such an approach reckless, it "is akin to forum shopping" and this court should not allow the Housing Commission "to get the proverbial 'second bite at the apple.'" *Id*. at 6.

Instead of obfuscating the state court's ruling on the demurrer, the Housing Commission should have attached the order on the demurrer as required by 28 U.S.C. § 1446(a), and moved to reconsider the ruling.[2] But, the Housing Commission does not argue that an error of law was committed in the Superior Court ruling, thereby justifying reconsideration of the four arguments. Pursuant to 28 U.S.C. § 1450, the Superior Court's ruling and order on the Housing Commission's demurrer remains in effect. *See Killmeyer v. Oglebay Norton Co*., 817 F. Supp. 2d 681 (W.D. Pa. 2011)(State court's dismissal of manufacturer of asbestos-related products from widow's wrongful death action prior to removal of action to federal court was binding on federal court). Because that ruling and order overruled the same arguments the Housing Commission re-raises in its Motion to Dismiss, the Housing Commission's Motion to Dismiss should be denied in its entirety.

> **1.** ***The Superior Court correctly rejected the Housing Commission's argument that Petitioners failed to allege sufficient facts to state a cause of action under the Unruh Civil Rights Act.***

The Superior Court already rejected the Housing Commission's argument that Petitioners had failed to allege sufficient facts under the Unruh Civil Rights Act. In its ruling and order on the Housing Commission's demurrer, the Superior Court held:

---

[2] *Resolution Tr. Corp. v. Nernberg*, 3 F.3d 62 (3d Cir. 1993); *Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230 (9th Cir. 1994).

> SDHC's demurrer to Petitioners' Unruh claim (2nd Cause of Action) is overruled. Petitioners have alleged sufficient facts to state a cause of action, including that SDHC is a business establishment. (ROA 42, FAP ¶ 8.) Arguments regarding the merits of the claim are not proper on demurrer.

Demurrer Order and Ruling, p. 3.[3]

The Housing Commission presents its argument as though the Superior Court had not received full briefing, heard oral argument, and rendered a decision on this same issue. Compare Resp.'s Demurrer, pp. 15-16 (arguing "SDHC's HCV Program is not a business establishment that falls within the statute"),[4] the Housing Commission's Reply to Petitioners' Opposition to Respondent's Demurrer (Resp.'s Reply ISO Demurrer), pp. 8-9 (arguing the same),[5] and the San Diego Superior Court's Order on that motion, p. 3,[6] with Resp.'s Motion to Dismiss, ECF Document 5-1, pp. 8-10 (arguing "SDHC's HCV program is not a business establishment subject to the Unruh Act" without mention of the Superior Court's ruling). The Housing Commission raised the same arguments in its unsuccessful anti-SLAPP motion which was considered by the Superior Court and heard at the same hearing as the Housing Commission's demurrer. *See* Resp.'s anti-SLAPP, pp. 8-9;[7] *see also* Petitioners' opposition to anti-SLAPP, p. 23.[8]

---

[3] Rather than include entire documents from the Superior Court record, Petitioners are providing the cover pages to those documents and Bates stamped excerpts in the order in which they appear in the opposition which will be attached as exhibits to the Declaration of Parisa Ijadi-Maghsoodi (Ijadi Dec.) in support of this Opposition, which will include the paragraph number with reference to the exhibit name where the excerpt may be found. Here, the Court will find page 3 of the Superior Court's Demurrer Order and Ruling at: Ijadi Dec. ¶2, Exhibit (Ex.) A.

[4] Ijadi Dec. ¶3, Ex. B. Demurrer filed at ECF Document 11-3 at p. 00001.

[5] Ijadi Dec. ¶4, Ex. C.

[6] Ijadi Dec. ¶2, Ex. A.

[7] Ijadi Dec. ¶5, Ex. D.

[8] Ijadi Dec. ¶6, Ex. E.

### 2. *The Superior Court correctly rejected the Housing Commission's argument that Petitioners failed to allege sufficient facts to state a cause of action under CCP § 1559.*

The Superior Court already rejected the Housing Commission's argument that Petitioners had failed to allege sufficient facts under CCP § 1559. In its ruling and order on the Housing Commission's demurrer, the Superior Court held:

> SDHC's demurrer to the 3rd Cause of Action for Breach of Contract by a Third Party Beneficiary is overruled. The recent California Supreme Court case *Goonewardene v. ADP, LLC* (Feb. 7, 2019) 6 Cal.5th 817, 826, clarifies and sets forth the elements for a breach of contract claim by a third party. The elements are: "(1) whether the third party would in fact benefit from the contract . . . (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. All three elements must be satisfied to permit the third party action to go forward." (*Id.* at 830.) Petitioners have alleged facts sufficient to state a cause of action. (ROA 42, at ¶¶ 41-57, 137-143.) SDHC argues the merits of the claim, which is not proper on demurrer.

Demurrer Order and Ruling, p. 3.[9]

The Housing Commission disingenuously presents its argument as though the Superior Court had not received full briefing, heard oral argument, and rendered a decision on this same issue. Compare Resp.'s Demurrer, pp. 16-19 (arguing the "MTW Agreement Does Not Create Third-Party Beneficiary Rights")[10], Resp.'s Reply ISO Demurrer, pp. 9-10 (arguing the "MTW Agreement Does Not Creates Enforceable Right by Third Party Beneficiaries"),[11] and the San Diego Superior Court's Order on that motion, p. 3,[12] with Resp.'s Motion to

---

[9] Ijadi Dec. ¶2, Ex. A.
[10] Ijadi Dec. ¶3, Ex. B.
[11] Ijadi Dec. ¶4, Ex. C.
[12] Ijadi Dec. ¶2, Ex. A.

---

15

Dismiss, ECF Document 5-1, pp. 11-16 (arguing the "MTW Agreement Does Not Create Third-Party Beneficiary Rights" without mention of the Superior Court's ruling). The Housing Commission raised the same arguments in its unsuccessful anti-SLAPP motion which was considered by the Superior Court and heard at the same hearing as the Housing Commission's demurrer. *See* Resp.'s anti-SLAPP, pp. 9-11; *see also* Petitioners' opposition to anti-SLAPP, pp. 23-24.[13]

### 3. *The Superior Court addressed the Housing Commission's arguments that Petitioners failed to allege sufficient facts to state a cause of action under Gov. Code § 11135.*

Just as with the other causes of action, the Housing Commission disingenuously presents its argument that Gov. Code § 11135 does not apply to the Housing Commission as though the Superior Court had not received full briefing, heard oral argument, and rendered a decision on this same issue. Compare Resp.'s Demurrer, pp. 19-20 (arguing "SDHC Is Not a State Agency, Nor Is the HCV Program Funded Directly or Receives Financial Assistance From the State Under Govt. Code § 11135"),[14] Resp.'s Reply ISO Demurrer, pp. 10 (arguing "HCV Program is not Funded Directly or Receives Financial Assistance From the State"),[15] and the San Diego Superior Court's Order on that motion,[16] with Resp.'s Motion to Dismiss, ECF Document 5-1, pp. 16-17 (arguing "SDHC Is Not a State Agency, Nor is the HCV Program Funded Directly or Receives Financial Assistance From the State Under Govt. Code § 11135" without mention of the Superior Court's ruling).

The Housing Commission repeats verbatim the arguments that the Superior Court rejected. The Superior Court rejected the Housing Commission's argument

---

[13] Ijadi Dec. ¶5, Ex. D; Ijadi Dec. ¶6, Ex. E.
[14] Ijadi Dec. ¶3, Ex. B.
[15] Ijadi Dec. ¶4, Ex. C.
[16] Ijadi Dec. ¶2, Ex. A.

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

that Gov. Code § 11135 does not apply to the Housing Commission when it moved on to the question of whether Petitioners had sufficiently alleged discrimination. Regarding discrimination, the Superior Court granted Petitioners leave to amend their three discrimination-based causes of action (including Gov. Code § 11135) to allege sufficient facts of disparate impact. Demurrer Order and Ruling, pp. 2-3.[17]

### 4.    *The Superior Court correctly addressed the Housing Commission's arguments that Petitioners failed to allege sufficient facts to state a cause of action under CCP § 1085.*

The Superior Court already rejected the Housing Commission's argument that Petitioners had failed to allege sufficient facts under the CCP § 1085. In its ruling and order on the Housing Commission's demurrer, the Superior Court held:

> SDHC's demurrer to the 7th Cause of Action for Writ of Ordinary Mandate is overruled. Petitioners have pleaded sufficient facts for the writ of mandate. (ROA 42, FAP at ¶¶ 187-200.) SDHC arguments attack the merit of the claim, which is inappropriate on demurrer.

Demurrer Order and Ruling, p. 3.[18]

The Superior Court received full briefing, heard oral argument, and rendered a decision on this same issue. Compare Resp.'s Demurrer, pp. 20-21 (arguing "The Writ of Mandate Fails Because the Act it Seeks to Compel Is a Discretionary Act, Not Ministerial, and Plaintiffs Have Plead They Have an Adequate Remedy at Law"),[19] Resp.'s Reply ISO Demurrer, pp. 10 (arguing "The Cause of Action for Writ of Mandate is Subject to Demurrer" and "Plaintiffs fail to plead they do not have an adequate remedy at law"),[20] and the Superior Court's Demurrer Order and Ruling, p. 3,[21] with Resp.'s Motion to Dismiss, ECF Document 5-1, pp. 17-18

---

[17] Ijadi Dec. ¶2, Ex. A.
[18] Ijadi Dec. ¶2, Ex. A.
[19] Ijadi Dec. ¶3, Ex. B.
[20] Ijadi Dec. ¶4, Ex. C.
[21] Ijadi Dec. ¶2, Ex. A.

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

(arguing "Writ of Mandate is Not Appropriate Because Plaintiffs Plead an Adequate Remedy at Law" without mention of the Superior Court's ruling). The Housing Commission set forth the same arguments in its unsuccessful anti-SLAPP motion at pages 18-19,[22] which the Superior Court heard on the same day.

The Superior Court's ruling and order on the Housing Commission's Demurrer remains in full force and effect.

**B.    Under the law of the case doctrine, the State Court Ruling and Order on the Housing Commission's Demurrer governs the issues raised in the Housing Commission's Motion to Dismiss.**

Under the law of the case doctrine, a decision continues to govern the same issues in subsequent stages in the same case. *See Gonzalez v. Arizona*, 677 F.3d 383, 390 fn. 4 (9th Cir. 2012). The Ninth Circuit has "recognized exceptions to the law of the case doctrine . . . where '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Id*. (internal citations omitted). Failing to apply law of the case without one of those "requisite conditions" present "constitutes an abuse of discretion." *Gallagher v. San Diego Unified Port Dist*., 14 F. Supp. 3d 1380, 1389 (S.D. Cal. 2014)(internal citation omitted). Because the Superior Court has previously ruled on the exact issues presented in the Motion to Dismiss and none of the exceptions to the law of the case doctrine apply, the Housing Commission's Motion to Dismiss should be denied.

The Superior Court ruling and order on the Housing Commission's demurrer rejected the same arguments that serve as the basis for its Motion to Dismiss. A demurrer is the California equivalent to a Rule 12(b)(6) motion in federal court. *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1032

---

[22] Ijadi Dec. ¶5, Ex. D.

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

n.14 (9th Cir. 2008). The equivalency in standards is not in dispute. *See* ECF Document 5-1, 11:10-15. The Superior Court's ruling and order has already decided the issues presented in the Motion to Dismiss and are law of the case. "This doctrine has developed to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478, at 637–38 (2002). Denying the Housing Commission's Motion to Dismiss in its entirety complies with the doctrine's principle of protecting both the court and parties against repeated re-argument, and avoids reconsideration of matters already decided in this lawsuit.

In addition to furthering consistency and avoiding second bites at the apple, ensuring a state court order remains law of the case also aligns with the policy under the *Rooker-Feldman* doctrine which is based on the concept that a litigant should not be able to challenge state court orders in federal courts as a means of relitigating matters that already have been considered and decided by a court of competent jurisdiction. It prevents federal district courts from serving as de facto appellate courts for state law decisions. Here, the Housing Commission, a party for whom an adverse state court ruling has been rendered, seeks federal court review of that ruling, and is thereby asking the federal court to sit as an appellate court of the state court ruling.

Addressing an analogous set of facts, involving a defendant's motion to dismiss claims that had been the subject of a demurrer at the state court level, the federal court in *Faurie v. Berkeley Unified Sch. Dist.*, 2008 WL 1886011, at fn. 12 (N.D. Cal. Apr. 25, 2008), addressed the effect of those actions:

> Defendants argue they were not forum shopping because the case was removable. It was not improper for Defendants to remove this case to federal court, just as it was not improper for Plaintiff to allege federal causes of action. It was improper to omit critical information that it was *revisiting* certain

issues. The effect was to seek a de novo second decision of an issue before a different adjudicator.

While the *Rooker*-Feldman doctrine is narrow, applicable to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), the policy underlying the doctrine is not – it precludes federal courts from engaging in what is essentially appellate review of state court rulings.

The federal court has the same power to reconsider rulings as would the state court, with reconsideration granted only in unusual circumstances involving newly discovered evidence, clear error, or an intervening change in controlling law, or when acting on a federal motion that has standards that differ from state law standards. *Kona Enters., v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Regarding motions to reconsider, the federal court in *Broncel v. H & R Transp., Ltd.*, 2010 WL 3582492, at 1 (E.D. Cal. 2010) held:

> Rule 59(e) motions "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945; *Kona Enters.*, 229 F.3d at 890. Stated differently, Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures [or] allow a party to introduce new evidence or advance new arguments that could and should have been presented to the district court prior to the judgment." *Dimarco-Zappa v. Cabanillas*, 238 F.3d 25, 34 (1st Cir. 2001).

An adverse state court ruling has been entered against the Housing Commission on the same arguments the Housing Commission raises in its Motion to Dismiss. The Housing Commission is seeking to have this Court review that state court ruling, but has failed to set forth any grounds to merit reconsideration. The Housing Commission is in effect asking a federal court to sit as an appellate

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1    court of a state court ruling, which is improper. The Housing Commission's

2    Motion to Dismiss should be denied in its entirety.

3    **C.   Petitioners allege sufficient facts to state a claim under the Unruh Civil Rights Act, CCP § 1559, Gov. Code § 11135, and CCP § 1085.**

4    

5    

6    Even if the Superior Court had not already held that Petitioners have

7    sufficiently stated their claims, the Housing Commission's Motion to Dismiss

8    should be denied because Petitioners have alleged sufficient facts to state a cause

9    of action under the Unruh Civil Rights Act, CCP § 1559, Gov. Code § 11135, and

10   CCP § 1085.

11   **1.   *Petitioners allege sufficient facts to state a cause of action under the Unruh Civil Rights Act.***

12   The Housing Commission argues that it is not a business establishment

13   subject to the Unruh Act. ECF Document 5-1, 8:11-10:26. But the Housing

14   Commission fails to provide even one case to support that assertion; the cases it

15   relies on are inapposite. And the Housing Commission has failed to distinguish the

16   long line of cases that have held similar agencies liable under the Act. The

17   Legislature intended "to include . . . *all private and public groups or*

18   *organizations . . .* that may reasonably be found to constitute 'business

19   establishments of every type [*sic*] whatsoever" under the purview of the Unruh

20   Act. *Isbister v. Boys' Club of Santa Cruz, Inc*., 40 Cal.3d 72, 79 (1985)(quoting

21   *O'Connor v. Village Green Owners Assn*., 33 Cal.3d 790, 795–796 (1983).

22   > Whether and when public entities are covered by the Unruh Act is well-litigated. Some courts have exempted public entities from Unruh Act liability. However, these cases do not stand for the categorical rule proposed by Defendants that "public entities are not considered business entities under the Act."

23   

24   

25   

26   *M. v. Nulick*, 2016 WL 2756822, at 2 (E.D. Cal. 2016).

27   Indeed, multiple cases have held that public entities, like public schools (*e.g.*

28   *Walsh v. Tehachapi Unified Sch. Dist*., 827 F. Supp. 2d 1107, 1123 (E.D. Cal.

---

21

2011)); and the DMV (*Bohlke v. California*, 2006 WL 2355395, at 3 (N.D. Cal. Aug. 15, 2006)), are liable for Unruh Act violations. Just as "public schools with their quintessential character of providing public accommodations and services to students" have been held to fall under the Act, the Housing Commission providing public accommodations and services and administering housing programs for low-income families should fall into the same category. *Yates v. E. Side Union High Sch. Dist.*, 2019 WL 721313, at 2 (N.D. Cal. Feb. 20, 2019).

Unlike the cases the Housing Commission cites which involve governmental entities solely providing a general government service (city sidewalks); a city's action enacting legislation (local ordinances); and, agency decisions to terminate public benefits or licenses, the Housing Commission's operations are extensive and it engages in a number of exchanges of money for goods and services with the public.

In determining whether an entity is subject to Unruh, courts consider the entity's activities and whether it has activities that are businesslike. *Isbister v. Boys' Club of Santa Cruz, Inc*., 40 Cal. 3d 72, 82 (1985)(businesslike "functions"); *O'Connor v. Vill. Green Owners Assn*., 33 Cal. 3d 790, 796 (1983)(businesslike "attributes"). An entity is not excluded from the Act simply because it is not profit-seeking. *O'Connor*, 33 Cal. 3d at 796. Nor is it excluded if its operations are not "strictly commercial." *Isbister*, 40 Cal. 3d at 78. The Housing Commission has businesslike activities, functions, and operations, and is therefore subject to Unruh.

The SAP alleges that the Housing Commission "is engaged in the business of owning, leasing, and managing more than 3,500 rental housing units, including 189 federal public housing units, and administering the Section 8 program." SAP, ¶20. These operations alone are sufficient to meet the pleading standard because these activities fundamentally include serving as a residential property owner, serving as a landlord, and accepting rent. These activities would certainly be reasonably found to constitute a business establishment. Petitioners should be

allowed to demonstrate as much at trial. Further, the Housing Commission's operations appear to be even more extensive that discussed above.[23]

The Housing Commission contends that Petitioners are conflating its programs as a "red herring," and "whether SDHC administers public housing, owns, leases or manages rental housing units is irrelevant" to the business establishment analysis. ECF Document 5-1, 10:13-15, 10:21-24. However, the Housing Commission cannot pick and choose which of its activities the Court should consider when determining whether it is a business establishment. If a bookstore happens to offer free reading classes to the community, that does not make it less of a business establishment. It would be still be subject to Unruh. The same is true here.

The cases the Housing Commission relies on do not hold that a public housing authority, much less one with as broad a range of functions as the Housing Commission, cannot be subject to Unruh. First, the Housing Commission relies on *Carter v. City of Los Angeles*, 224 Cal.App.4th 808, 825 (2014), which addressed a city's provision of city sidewalks and curbs. Given the absence of businesslike attributes involved with a city's provision of city sidewalks and curbs, the Court held that that the city was not liable under the Unruh Act.

Second, it relies on cases involving agencies that provide only social services. *Williams v. Cty. of Alameda*, No. 18-cv-05707-JSC, 2018 U.S. Dist. LEXIS 185930, at *4 (N.D. Cal. Oct. 30, 2018), involved a pro se litigant

---

[23] Resp.'s Demurrer, 2:26-28. Ijadi Dec. ¶3, Ex. B (The Housing Commission states that its operations include "developing affordable multifamily rental housing, providing loans for private developers to developing and funding low income housing projects, administering first time home buyer programs…"); Ijadi Dec. ¶9 (The Housing Commission also administers a housing trust fund, initiates foreclosure proceedings against properties if loans or revocable grants are not in compliance, aggressively pursues collections of loans which become delinquent, schedules Trustee's Sales, holds public auctions, institutes judicial foreclosure proceedings, and acquires and purchases real estate.).

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

contesting enrollment renewal of CalFresh and Medi-Cal at a county social services agency. Because of the lack of businesslike attributes, the welfare office was not liable under the Unruh Act. *Id. Romstad v. Contra Costa* County, 41 Fed. Appx. 43, 46 (9th Cir. 2002), involved a county's adoption policy and a foster care license at a county social services office, which the court held was not a "business establishment" under the Act. None of those cases alleged that the agencies were engaging in business-like activities like the Housing Commission engages in.

Third, the Housing Commission relies on two cases involving a city enacting legislation. The Housing Commission relied on these cases in its anti-SLAPP motion to support its argument that this case is about a city enacting legislation which should be immune from judicial review. *Qualified Patients Assn. v. City of Anaheim*, 187 Cal. App. 4th 734 (2010) (City of Anaheim enacted an ordinance on medical marijuana); *Burnett v. San Francisco Police Department*, 36 Cal. App. 4th 117 (1995) (San Francisco enacted an ordinance precluding minors from entering nightclubs). But, as the parties extensively briefed for the Superior Court, neither the facts nor the law support the Housing Commission's contention. Neither case cited by the Housing Commission is relevant because this case does not involve the enactment of legislation.

Fourth, it relies on cases addressing membership in the Boy Scouts, but does not contend that a public housing authority even remotely fits the description of the Boy Scouts, "a charitable, expressive, and social organization." *Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal. 4th 670, 697 (1998). The Housing Commission's request to dismiss the Unruh Act claim should be denied.

### 2. *Petitioners allege sufficient facts to state a cause of action under CCP § 1559.*

The Housing Commission moves to dismiss Petitioners' third-party beneficiary cause of action on grounds that Petitioners fail to state sufficient facts under Rule 12(b)(6). ECF Document 5-1, 11:1-6. The Housing Commission also

1   moves to dismiss this cause of action on grounds that Petitioners lack standing

2   under Rule 12(b)(1). *Id.*

3          Where jurisdiction is intertwined with the merits, courts must "assume [ ] the

4   truth of the allegations in a complaint ... unless controverted by undisputed facts in

5   the record." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987). However,

6   a motion to dismiss for lack of statutory standing goes to the merits of the claim,

7   and should be brought under 12(b)(6), as statutory standing goes to merits rather

8   than subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F. 3d 1060, 1067-1068

9   (9th Cir. 2011).

10          As set forth in detail, *infra,* the Housing Commission's argument fails for

11  multiple reasons. First, the SAP sufficiently alleges that the Housing

12  Commission's actions constitute a breach of its contractual obligations under its

13  Moving To Work (MTW) Agreement, including its obligation to comply with

14  federal fair housing law and to affirmatively further fair housing. Second, the cases

15  the Housing Commission relies on are inapposite. It relies on a case involving

16  *incidental* beneficiaries, but Petitioners are *intended* beneficiaries unlike in

17  *Martinez v. Socoma Companies, Inc.*, 11 Cal.3d 394 (1974). Its reliance on *Astra*

18  *USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), is misplaced for three

19  reasons. First, *Astra* applied federal common law, but this case involves California

20  Civ. Code § 1559, which multiple California courts have held *can* be used by the

21  general public to enforce laws. *Zigas v. Superior Court*, 120 Cal.App.3d 827

22  (1981). Second, *Astra* involved an opt-in contract*,* unlike the contract at issue in

23  this case (the Housing Commission's introduction of extrinsic evidence regarding a

24  "standardized agreement" (ECF Document 5-1, 15:21-25) is procedurally improper

25  at the pleading stage, and is factually inconsistent with the Housing Commission's

26  statements regarding its MTW status which it boasts as a designation, not a

27  contract *any* public housing authority could opt-in to. Ijadi Dec. ¶10.) Third, *Astra*

28

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

involved a statute that provided no private right of action, but this case involves statutes with private rights of action. Pet.'s Opp. to Resp.'s Demurrer, 20:1-22:9.[24]

The Civ. Code § 1559 elements are whether the third party would in fact benefit from the contract, whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. *Goonewardene v. ADP, LLC*, 6 Cal.5th 817, 830-831 (2019).

The Housing Commission breached the contract by failing to comply with specified fair housing laws. The contract was made for Petitioners' benefit in that the contract governed the Housing Commission's administration of the Section 8 program which provides housing assistance payments to Petitioners where the motivating purpose of the contracting parties is to provide this benefit to low-income families. Further, the intent of Congress in enacting the Section 8 program, the language of the statute, the relevant legislative history, HUD's implementing regulations, and the contract itself, all support that the purpose is to provide affordable rental housing to low-income families, and to ensure low-income families contribute towards rent no more than the Section 8 program deems reasonable. As such, permitting third party beneficiaries to bring a claim is consistent with the objectives of the contract and the expectations of the contracting parties. SAP, pp. 15-21, 70-71.

The Housing Commission's Motion to Dismiss repeats practically verbatim from its unmeritorious demurrer, a lengthy discussion of *Goonewardene v. ADP, LLC*, 6 Cal.5th 817 (2019) and the case it cites: *Martinez v. Socoma Companies, Inc.*, 11 Cal.3d 394 (1974). However, even under the analysis set forth in *Goonewardene*, the Housing Commission's argument is without merit – a

---

[24] Ijadi Dec. ¶7, Ex. G.

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

conclusion reached by the Superior Court which set forth the *Goonewardene* analysis in the demurrer order and ruling. Demurrer Order and Ruling, p. 3.[25]

Further, the Housing Commission's reliance on *Martinez v. Socoma Companies, Inc* is misplaced.[26] *Zigas v. Superior Court*, 120 Cal.App.3d 827 (1981) distinguished *Martinez* and determined tenants were *intended*, and not merely incidental beneficiaries of a housing contract and therefore had standing to sue: "the purpose of the Legislature and of the contract between real parties and HUD is narrow and specific: to provide moderate rental housing for families with children." *Id.* at 838. Like *Zigas,* Petitioners here are third party beneficiaries of the contract, thus "maintenance of petitioners' action in this case will only serve to effectuate the polices of the Act." *Id.* at 840.

According to the *Zigas* court, "[I]t is clear in *Martinez* that it was the government that was out of pocket as a consequence of the breach and should be reimbursed therefor, not the people to be trained and given jobs. In the case at bench, as in *Shell*, the government suffered no loss as a consequence of the breach, it was the renter here and the veteran purchaser in *Shell* that suffered the direct pecuniary loss." *Zigas*, 120 Cal. App. at 837.

The *Shell* case cited in *Zigas*, involved a building contractor who entered into an agreement with the federal government to build homes for veterans. The homes failed to comply with the agreed specifications, and the veterans were held to be third party beneficiaries of the agreement. *Shell v. Schmidt*, 126 Cal.App.2d 279, 287 (1954). In *Curtis v. Hous. Auth. of Oakland*, 746 F. Supp. 989 (N.D. Cal.

---

[25] Ijadi Dec. ¶2, Ex. A.

[26] *Martinez v. Socoma Companies, Inc.*, 11 Cal.3d 394 (1974) (Defendant companies entered into federal contracts to establish manufacturing facilities in a low-income neighborhood. Residents' claim for breach of contract, as third-party beneficiaries, for defendant's failure to provide jobs was denied because the benefits were intended to serve the larger purpose of improving conditions in the neighborhood rather than as a gift to merely incidental beneficiaries.).

1990), the public housing authority's practice of ceasing to provide stoves to new tenants violated tenants' rights as third-party beneficiaries of an Annual Contributions Contract between HUD and the Oakland Housing Authority. In *Zakaria v. Lincoln Property Co. No. 415, Ltd*., 185 Cal. App. 3d 500 (1986), Section 8 voucher holders were third-party beneficiaries of a regulatory agreement and entitled to a preliminary injunction against the owners because a policy of permitting no more than four persons to occupy a three-bedroom unit was a breach of the contract. In *Ramirez, Leal & Co. v. City Demonstration Agency*, 549 F.2d 97, (9th Cir. 1976), a contractor could bring a claim as a third-party beneficiary of a grant agreement between a city and HUD which required city preference for local businesses. In *Holbrook v. Pitt*, 643 F.2d 1261, 1270 and 1273 (7th Cir. 1981), the court held (emphasis added):

> To determine whether plaintiffs have enforceable rights under the Contracts we must analyze the purposes underlying their formation. Plaintiffs maintain that HUD executed the Contracts in order to provide rental assistance to low income families. HUD, however, claims that plaintiffs are only incidental beneficiaries of the Contracts, since the primary purpose of the Section 8 program, and the Contracts entered into pursuant thereto, was to benefit financially troubled HUD-insured projects. We reject this argument, as it is contradicted by the language of Section 8, relevant legislative history, HUD's implementing regulations and interpretations and the terms of the Contracts. HUD's position displays an astonishing lack of perspective about government social welfare programs. **If the tenants are not the primary beneficiaries of a program designed to provide housing assistance payments to low income families, the legitimacy of the multi-billion dollar Section 8 program is placed in grave doubt.**
> …
> Having concluded that plaintiffs have enforceable rights under the Contracts, we must determine whether the Contracts have been breached.

*Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011), is inapposite because it applied federal common law, not California state law. In *Astra,* the statutory scheme at issue had no private right of action and the Supreme

28

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

Court declined to create a private right of action under a third-party beneficiary theory in the absence of clear Congressional intent. However, in the present case, the statutes Petitioners are seeking to enforce do have private rights of action.

Additionally, in contrast to federal common law prohibiting a private right of action not specifically provided by Congress in a statute, California courts have held Civ. Code § 1559 *can* be used by the general public to enforce "a law that imposes obligations on legislative bodies expressly for the benefit of the general public." *Service Employees Internat. Union, Local 99 v. Options—A Child Care & Human Services Agency*, 200 Cal. App. 4th 869, 881 (2011). Further, "absent an indication that the contracting parties intended otherwise, an agreement to comply with [a statute] indicates an intent to benefit the same persons who would benefit if the act applied directly and an intent to confer a right on those same persons to enforce [the statute's] requirements as contractual obligations." *Id.*

The Housing Commission's claim that the contract provides HUD with authorization to take action and pursue remedies does not preclude, prevent, or prohibit action by third party beneficiaries because there is no enforceability clause that unambiguously forecloses Petitioners' enforceability rights. ECF Document 5-1, 14:28-15:25. Neither the text of the contract nor governing law support such a position. "The enforcement of such a provision in a government contract should not depend on action by the public agency, which may have little incentive to enforce the provision." *Service Employees Internat. Union, Local 99*, 200 Cal. App. 4th at 880 (citing *Zigas*, and involving a contract requiring compliance with the Brown Act).

The Housing Commission repeats from its demurrer to Petitioners' original petition and complaint, a misplaced reliance on *Wallace v. Chicago Housing Authority*, 298 F.Supp.2d 710, 715 (N.D. Ill. 2003). Resp.'s Demurrer to Pet.'s

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

Original Petition and Complaint, pp. 10-11.[27] While the Housing Commission neglects to analyze or explain the holding in *Wallace,* the Housing Commission provides a lengthy excerpt from *Wallace* that undermines the Housing Commission's argument against third-party beneficiary standing: "the stringent third-party beneficiary standard under Illinois law." *Id.* at 725; ECF Document 5-1, 13:13-14. "Under Illinois law, there is a strong presumption against creating rights in a third-party beneficiary." *Id.* However, Petitioners do not base their breach of contract claim on Illinois third-party beneficiary state law, which has a presumption against third party beneficiary standing. Instead, as stated clearly in the SAP, Petitioners' base their claim on Civ. Code § 1559. SAP, pp. 70-71.[28]

---

[27] Ijadi Dec. ¶7, Ex. F.

[28] It is not clear if Respondent is relying on *Wallace* for reasons outside of third-party beneficiary standing. However, such reasons would also be misplaced. First, the plaintiffs in *Wallace* did not allege breach of the MTW agreement at issue in this case, but instead, a different MTW agreement which contained different provisions than Respondent's MTW agreement. The *Wallace* MTW agreement incorporated a 10-year Plan for Transformation; contained specific demolition, replacement, and rehabilitation provisions, and promised substantial federal funds to accomplish those provisions; and incorporated a Resident Protection Agreement that required the housing authority to negotiate a legally enforceable lease amendment with a tenants' council outlining tenant rights of those relocated under the Plan for Transformation. Second, the plaintiffs in *Wallace* alleged breach of contract issues related to those specific provisions and agreements, specifically raising allegations pertaining to relocation issues. Third, the MTW agreement in *Wallace* included separate agreements entered into by the plaintiffs, which addressed the relocation issues plaintiffs alleged in their complaint. *Id.* at 724-725. The court held that the plaintiffs could maintain a separate cause of action for breach of contract as parties: "Indeed, the very fact that the Moving to Work Agreement envisions that CHA and its residents would enter into a separate agreement governing their rights and responsibilities during the Plan for Transformation undercuts Plaintiffs' argument that they should be accorded third-party beneficiary status." *Id.* at 724. No such separate agreements are at issue here.

### 3. *Petitioners allege sufficient facts to state a cause of action under Gov. Code § 11135.*

The Housing Commission moves to dismiss Petitioners' fourth cause of action on grounds that Gov. Code § 11135 does not apply to the Housing Commission because it is neither a state agency nor is its Housing Choice Voucher funded by the state. ECF Document 5-1, 16:5-8.

The SAP alleges that the Housing Commission receives state funding for the housing programs it administers (the Section 8 housing program is indisputably one of the housing programs the Housing Commission administers), and that the Housing Commission has engaged in a racially-biased policy. SAP, pp. 5, 71-72. Thus, Petitioners have alleged sufficient facts for Gov. Code § 11135. *See Comm. for Immigrant Rights v. County of Sonoma*, 644 F. Supp. 2d 1777, 1207 (2019) ("Because the complaint alleges that Sonoma County receives state funding, and that Sonoma County Sheriff's deputies have engaged in a racially-biased policy, practice and custom of relying on the impermissible factors such as race, color and/or ethnicity to stop, detain, question and/or search persons who are or appear to be Latino, the court finds that plaintiffs have alleged sufficient facts to withstand County Defendants' motion to dismiss.").

The Housing Commission falsely claims Petitioners "admit" that the program is *solely* federally funded. ECF Document 5-1, 16: 26-27. Petitioners do not admit this, and Petitioners already refuted this false claim when the Housing Commission raised it in its Demurrer.[29]

The standard on a motion to dismiss is whether Petitioners have set forth sufficient allegations for the cause of action, and Petitioners have sufficiently

---

[29] Pet.'s Opp. to Resp.'s Demurrer, p. 22. Ijadi Dec. ¶8, Ex. G. The Housing Commission's public documents show it receives $500,000 in state funds, partly maintained in unrestricted accounts (allowing for use in housing programs), and state funds are referenced in the context of HAP (Section 8) contracts. Ijadi Dec., ¶11. Petitioners requested this information in discovery. Ijadi Dec. ¶8, Ex. G.

PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

alleged that the Housing Commission receives state funds for its Gov. Code § 11135 cause of action.

### 4.   *Petitioners Allege Sufficient Facts for their Writ of Mandate Claim (CCP § 1085).*

The Housing Commission moves to dismiss Petitioners' seventh cause of action on grounds that Petitioners allege that they have an adequate remedy at law. ECF Document 5-1, 17:22-24.

> To state a cause of action for writ of mandamus the petition must plead facts showing (1) [respondent] has a clear duty; (2) [petitioner] has a beneficial interest in [respondent]'s performance of that duty; (3) [respondent] has the ability to perform the duty; (4) [respondent] has failed to perform the duty or has abused its discretion in performing the duty; and (5) [petitioner] has no other plain, speedy or adequate remedy.

*Elmore v. Imperial Irrigation Dist.*, 159 Cal. App. 3d 185, 193 (1984), citing CCP §§ 1085, 1086, and *Payne v. Superior Court*, 17 Cal.3d 908, 925 (1976).

Petitioners have alleged sufficient facts showing the Housing Commission has a clear duty; Petitioners have a beneficial interest in the Housing Commission's performance of that duty; the Housing Commission has the ability to perform the duty; the Housing Commission has failed to perform the duty or has abused its discretion in performing the duty; and, Petitioners have no other plain, speedy or adequate remedy. The Housing Commission has a mandatory legal duty to comply with the FEHA, Unruh, Gov. Code § 11135, and the FHA, and by violating these laws, has failed to perform its mandatory legal duties and abused its discretion. SAP, pp. 77-79. A writ of mandate is proper to compel a public officer to comply with his or her lawful obligations when the conduct or declarations of the public officer against whom relief is sought indicates the officer does not intend to comply with such obligations. *King v. Martin*, 21 Cal. App. 3d 791, 795–796 (1971).

The Housing Commission has failed to comply with its ministerial duties by setting payment standards in a way that violates the aforementioned laws, and its

actions constitute an abuse of discretion. SAP, pp. 77-79. "The trial court's inquiry in a traditional mandamus proceeding is limited to whether the local agency's action was arbitrary, capricious, or entirely without evidentiary support, and whether it failed to conform to procedures required by law."[30]

"Whether there is a "plain, speedy and adequate remedy in the ordinary course of law" within the meaning of the statute usually is regarded as a question of fact that requires an evaluation of the circumstances of each particular case." *Villery v. Department of Corrections & Rehabilitation*, 246 Cal. App. 4th 407, 414 (2016). Here, writ of mandate is appropriate because an adequate remedy does not exist in the ordinary course of law specifically because it is not compensation to Petitioners, but instead the performance of public acts by public officials, that Petitioners seek, and time is of the essence to compel compliance with fair housing laws in order to prevent the furthering of racial segregation.[31]

The Housing Commission's argument also fails because Petitioners seek writ relief that differs from the relief sought under the aforementioned statutes – to compel the Housing Commission to comply with its own Annual Plan and Administrative Plan. SAP, ¶ 278. Mandate is proper to compel a public agency not just to establish rules, but to follow them when it has ministerial duty to do so. *Galzinski v. Somers*, 2 Cal. App. 5th 1164, 1171-1175 (2016). The Housing Commission has a ministerial duty to comply with its own rules and regulations, yet the Housing Commission's actions violated these rules, which constitutes an abuse of discretion. SAP, pp. 24-25, 78; *Baldwin v. Hous. Auth. of City of Camden, NJ*, 278 F. Supp. 2d 365, 386-387 (D.N.J. 2003).

---

[30] *Neighbors in Support of Appropriate Land Use v. County of Tuolumne*, 157 Cal.App.4th 997, 1004 (2007).
[31] SAP, pp.77-79. *See California Teachers Assn. v. Nielsen*, 87 Cal. App. 3d 25, 28-29 (1978); *see also Elmore v. Imperial Irrigation Dist.*, 159 Cal. App. 3d 185 (1984).

The three cases the Housing Commission relies on are inapposite. *Pich v. Lightbourne*, 221 Cal. App. 4th 480, 491 (2013), did not address the issue: "we do not reach the issue of whether plaintiffs have no other adequate remedy at law." In *California Sch. Bds. Assn. v. State of California,* 192 Cal. App. 4th 770, 796 (2011), relief in the form of a writ was improper because the Legislature had created a specific administrative process and a judicial process for obtaining relief from unfunded mandates through Gov. Code § 17612, which provided a remedial procedure for school districts to challenge unfunded (or nominally funded) mandates. The Housing Commission does not contend that the Legislature created a remedial provision in the Gov. Code to render relief in the form of a writ improper in this case, because no such provision exists. *City of Culver City v. State Bd. of Equalization*, 29 Cal. App. 3d 404 (1972), involved the mistaken distribution of sales taxes by a state agency defendant where plaintiff was a city with two pending and related legal actions for recovery of the sales taxes: issuance of an alternative writ and the adequacy of the ordinary remedy for breach of contract were at issue. Here, the SAP does not set forth a breach of contract allegation under Writ of Mandate, nor is there a pending prior action. SAP, p. 78.

## V.    CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Housing Commission's Motion to Dismiss should be denied. If the Court determines that the allegations of the SAP are not sufficient for any reason, Petitioners request leave to amend.

Date: March 5, 2020                    s/ Parisa Ijadi-Maghsoodi

                                       Parisa Ijadi-Maghsoodi, Esq.
                                       Attorneys for Plaintiffs and Petitioners